■ MICHAEL J. DELLA ROCCO, JR., Respondent, et al., Plaintiffs, v CITY OF SCHENECTADY, Appellant. [717 NYS2d 704] —Crew III, J. Appeal from an order and judgment of the Supreme Court (Lynch, J.), entered January 12, 2000 in Schenectady County, which, *inter alia*, denied defendant's cross motion for summary judgment dismissing the complaint.

In 1970, plaintiff Michael J. Della Rocco, Jr. (hereinafter plaintiff), a firefighter employed by defendant, suffered a disabling injury in the line of duty. At that point in time, General Municipal Law former § 207-a required a municipality to pay an injured firefighter his or her full salary and medical expenses until such time as the disability ceased. Under this version of the statute, such payments would continue so long as the firefighter did not recover from his or her injury, even if the firefighter remained disabled for the remainder of his or her life (*see, Matter of Mashnouk v Miles*, 55 NY2d 80, 84).

In December 1977 defendant, seeking to take advantage of an amendment to General Municipal Law § 207-a (L 1977, ch 965, eff Jan. 1, 1978) that permitted a municipality to involuntarily retire a disabled firefighter provided the municipality

pay the firefighter the difference between his or her salary and the retirement benefit until such time as he or she reached mandatory retirement age, notified plaintiff of its intent to retire him. Plaintiff and two other similarly disabled firefighters (plaintiffs Charles Palmer and Edward G. Varno) resisted this effort and, throughout 1978, a controversy existed as to the applicability of the amendment to firefighters who were disabled prior to the amendment's effective date. This issue seemingly was resolved by *Cook v City of Binghamton* (Sup Ct, Broome County, Mar. 6, 1978, Yesawich, Jr., J.), wherein it was held that such amendment could not be applied retroactively as firefighters injured prior to the effective date thereof had a vested right to the continued receipt of their benefits.

Although aware that the *Cook* decision (*supra*) was on appeal and that the law on this issue was in a state of flux, defendant, fearing "an almost certain lawsuit which would cripple [its] efforts in this area," entered into negotiations with plaintiff, Palmer and Varno whereby defendant agreed, insofar as is relevant to this appeal, to pay plaintiff the difference between his retirement benefit and salary *for life*, plus the premium on his life insurance policy, in exchange for his voluntary retirement and forbearance of litigation.[1] Shortly thereafter, this Court reversed the essential holding of *Cook*, concluding that the 1978 amendment to General Municipal Law § 207-a did not impair a vested right but, rather, merely altered the terms and conditions of a firefighter's employment (*Cook v City of Binghamton*, 67 AD2d 469, *mod* 48 NY2d 323), i.e., even those firefighters injured prior to the effective date of the amendment were entitled to the supplemental payment only until they attained the mandatory retirement age.

Defendant continued to make the negotiated payments to plaintiff until February 1997, at which time it advised plaintiff, who had attained age 70 approximately one year earlier and, hence, had reached the mandatory retirement age, that it was terminating such payments pursuant to General Municipal Law § 207-a. Plaintiff, Palmer and Varno thereafter commenced this action seeking, *inter alia*, a declaration that defendant must continue to make the payments for which the parties had negotiated some 20 years earlier. Defendant moved to

---

1. It appears that defendant required plaintiff to select "option zero" with respect to his retirement benefit, which gave plaintiff a large weekly retirement check (and, hence, minimized the contribution required by defendant) but afforded no residual death benefit. In an effort to put plaintiff on equal footing with Palmer and Varno, whom defendant allowed to select whatever retirement option they desired, defendant agreed to pay the premium on plaintiff's life insurance policy.

dismiss, contending that the complaint failed to state a cause of action. That motion was granted as to Palmer and Varno (who had not yet attained age 70) but denied as to plaintiff's first, second and fourth causes of action alleging, *inter alia*, breach of contract. Following joinder of issue, plaintiff moved for summary judgment and defendant cross-moved for summary judgment dismissing the complaint contending, *inter alia*, that no valid agreement between plaintiff and defendant existed and, in any event, enforcement of any such agreement would be barred by various provisions of the Second Class Cities Law. Supreme Court granted plaintiff's motion and denied defendant's cross motion, prompting this appeal.

We affirm. While it is true that the agreement between plaintiff and defendant was not reduced to a single, signed stipulation, the various writings contained in the record, including the April 27, 1979 memorandum from City Manager Wayne Chapman to the then Mayor and members of the City Council and the attached documents, taken together, are sufficient to establish that the parties indeed entered into a settlement, pursuant to the terms of which defendant agreed to pay plaintiff the difference between his retirement benefit and salary for life, plus the premium on his life insurance policy, in exchange for plaintiff's voluntary retirement and forbearance of litigation. In addition to such writings, which contain the essential terms of the parties' agreement,[2] the record is replete with affidavits from various City officials, including former Mayor Frank Duci and former members of the City Council, all attesting to the existence of the settlement agreement between plaintiff and defendant.

As to the issue of whether the settlement agreement found to exist between the parties is enforceable in the absence of a City Council ordinance or resolution,[3] it is well settled that "[a] municipality may ratify a contract made on its behalf which it has the authority to make even if the contract was initially in-

---

**2.** To the extent that defendant asserts there is inadequate consideration to support any such agreement, we need note only that plaintiff's promise to forego litigation constituted valid consideration for the underlying settlement agreement (*see generally, Wood Realty Trust v Storonske Cooperage Co.*, 229 AD2d 821, 823).

**3.** The only ordinance apparently passed in this matter was ordinance No. 81-118, which, after expressly referencing the April 1979 settlement between the three firefighters at issue, approved a retroactive life insurance premium payment for Palmer. It is clear from the record, however, that "a confidential memorandum [from Chapman] on the City's settlement with * * * [the three firefighters] who [took] disability retirement under the provisions of [General Municipal Law § 207-a]" was received by the City Council at its May 7, 1979 meeting.

valid due to a defective execution or because the municipal officer who purported to execute it did not have the requisite authority" (*Imburgia v City of New Rochelle*, 223 AD2d 44, 48, *lv denied* 88 NY2d 815). Here, defendant made the supplemental salary and life insurance premium payments outlined in the agreement with plaintiff for approximately 20 years before discontinuing the supplemental salary payment in February 1997,[4] some 10 months after plaintiff had attained the mandatory retirement age. Additionally, the record makes clear that defendant, having compelled plaintiff to select "option zero" with respect to his retirement benefit, enjoyed a substantial financial savings over the years as a result of the settlement agreement. It is equally apparent from the numerous affidavits in the record that the relevant public officials, i.e., the then Mayor, City Manager and members of the City Council, were well aware of and acquiesced in the settlement agreement and the terms thereof. In our view, having accepted the benefits of this agreement for some 20 years, defendant ratified the settlement and cannot now disavow its existence or challenge its validity. Defendant's remaining contentions, including its assertion that the subject agreement violates public policy considerations, have been examined and found to be lacking in merit.

Cardona, P. J., Peters, Rose and Lahtinen, JJ., concur. Ordered that the order and judgment is affirmed, with costs.

---

4. It appears that defendant has continued to pay plaintiff a sum equal to the amount of his annual life insurance premium.