██ JOSEPH D. PALMO et al., Respondents, v ERIC J. STRAUB et al., Defendants. STATE FARM INSURANCE COMPANY, Appellant. [845 NYS2d 549]—

Carpinello, J. Appeal from an order of the Supreme Court (Reilly, Jr., J.), entered July 25, 2006 in Schenectady County, which granted plaintiff's motion to require State Farm Insurance Company to accept a certain sum in full satisfaction of its claim for overpayment.

Following an October 2002 car accident with defendant Erik J. Straub, plaintiff Joseph D. Palmo (hereinafter plaintiff), who was insured by State Farm Insurance Company, collected both workers' compensation benefits and no-fault benefits for lost wages. By letter dated June 24, 2004, State Farm's then at-

torney notified plaintiff that he received an overpayment slightly in excess of $10,857 and demanded reimbursement of same. In this letter, State Farm indicated that it would file suit against plaintiff if the overpayment was not paid within a specified period of time, but further indicated its willingness to "contract a lien on [his] personal injury suit wherein payment will be made to State Farm when [such] personal injury suit is settled." In a subsequent letter dated July 12, 2004, State Farm reaffirmed, based in part on "the information received from [workers' compensation]," that the overpayment of wages "to date" was slightly in excess of $10,857. In this letter, State Farm requested a signed written statement from plaintiff reflecting his agreement to reimburse State Farm in this amount from the settlement of his personal injury action.

Plaintiff acceded to this request. Specifically, on July 15, 2004, plaintiff confirmed in writing that he agreed to accept a lien on his personal injury action in the amount of $10,857.03. In a letter dated the same date to State Farm, plaintiff's attorney also indicated his willingness "to treat [the] overpayment of $10,857.03 as a lien against [plaintiff's] net recovery on his third-party action against Straub." The letter further stated that, "[a]s per our agreement, you [i.e., State Farm] will resume no-fault payments due to [plaintiff] and not proceed with any direct legal action against him to recover the claimed overpayment." A subsequent letter dated August 10, 2004 again confirmed "an agreement" between these parties.

In December 2004, State Farm obtained new counsel. In February 2005, this new attorney, obviously unaware of the parties' prior agreement, wrote to plaintiff's counsel and advised him that an overpayment had been made to plaintiff. The overpayment was alleged to be over $19,000 (there is no explanation in the record for the discrepancy in the two figures other than an indication that a more thorough review of the matter was undertaken by the new attorney). A few months later, the personal injury action was settled for $60,000.

State Farm's subsequent refusal to accept any amount less than $19,000, even after its new attorney was educated about the previous agreement, prompted a motion by plaintiffs for an order precluding State Farm from pursuing recovery of its lien beyond the agreed-upon amount. In support of the motion, both plaintiff and his attorney averred that, in settling the underlying personal injury case, plaintiff relied upon State Farm's representation that the payment of $10,857.03 would constitute a full satisfaction of its claim. Supreme Court, finding a binding agreement between plaintiff and State Farm, granted the motion. This appeal ensued.

The primary issue before us concerns whether plaintiff and State Farm entered into a binding agreement concerning the overpayment of no-fault insurance benefits. We find that they did and thus affirm Supreme Court's order enforcing that agreement. In short, the series of writings between June 2004 and August 2004 between and among plaintiff, his attorney and State Farm's then attorney "taken together, are sufficient to establish that the parties indeed entered into a settlement" of the overpayment received by plaintiff (*Della Rocco v City of Schenectady*, 278 AD2d 628, 630 [2000], *lv denied* 96 NY2d 709 [2001]). We find that the settlement agreement was adequately described in these writings, namely, the agreement was clear, the product of mutual accord and contained all material terms (i.e., plaintiff agreed to a lien in the amount of approximately $10,857 and State Farm agreed to resume no-fault payments and forego litigation to recover the overpayment) (*see Bonnette v Long Is. Coll. Hosp.*, 3 NY3d 281, 286 [2004]). That State Farm thereafter obtained a new attorney who then, apparently, more thoroughly investigated the matter and came up with a different calculation of the overpayment does not render the otherwise clear and enforceable settlement unenforceable.

As a final matter, we are unpersuaded by State Farm's attempt to vitiate the binding effect of the parties' agreement by invoking plaintiff's failure to comply with CPLR 2104 (*see e.g. Kleinmann v Bach*, 239 AD2d 861, 862 [1997]; *Buckingham Mfg. Co. v Frank J. Koch, Inc.*, 194 AD2d 886, 888 [1993], *lv denied* 82 NY2d 658 [1993]; *Van Ness v Rite-Aid of N.Y.*, 129 AD2d 931, 932 [1987]), particularly since plaintiff relied upon the agreement in settling his personal injury case (*see e.g. Conlon v Concord Pools*, 170 AD2d 754, 754-755 [1991]; *Smith v Lefrak Org.*, 142 AD2d 725 [1988]; *La Marque v North Shore Univ. Hosp.*, 120 AD2d 572, 573 [1986]; *Rhulen Agency v Gramercy Brokerage*, 106 AD2d 725, 727-728 [1984]).

Mercure, J.P., Peters, Spain and Mugglin, JJ., concur. Ordered that the order is affirmed, with costs.