Devine, J.
Appeal from an order of the Supreme Court (Demarest, J.), entered April 17, 2014 in St. Lawrence County, which, in two proceedings pursuant to RPTL article 7, denied petitioner’s motion for summary judgment to enforce a settlement agreement between the parties.
Petitioner, a not-for-profit corporation, owns substantial *1423 property in the Town of Lisbon, St. Lawrence County and has used it not only to operate a farm, restaurant and bed and breakfast, but also to provide the public with training and educational information concerning organic and biodynamic farming and gardening. After applying for an exemption from property taxation in 2007, petitioner initiated an RPTL article 7 proceeding urging that its property was tax exempt pursuant to RPTL 420-a. Separate proceedings seeking identical relief as to subsequent tax years were commenced in 2009, 2010 and 2011. Supreme Court, upon the parties’ stipulation, thereafter consolidated the 2007, 2009 and 2010 proceedings (hereinafter proceeding No. 1); the proceeding initiated in 2011 (hereinafter proceeding No. 2) remained distinct.
In early 2012, representatives of the parties engaged in written correspondence concerning a potential settlement, the terms of which would involve payment by petitioner of the taxes in dispute, a refund in petitioner’s favor as to tax year 2011, and a property tax exemption for petitioner from tax year 2012 and on. In October 2013, petitioner paid off its back taxes and, later that month, respondent Board of Assessment Review of the Town of Lisbon determined the property in question to be exempt. Soon thereafter, proposed stipulations were circulated among the parties, neither of which was executed. Petitioner, arguing that the parties had entered into a binding settlement agreement, moved for summary judgment in proceeding Nos. 1 and 2. Supreme Court disagreed and denied the motion. This appeal ensued.
We affirm. The dispositive question before us is whether the early 2012 communications led to a binding settlement agreement between the parties. In that regard, an out-of-court settlement agreement “is not binding upon a party unless it is in a writing subscribed by [that party] or [that party’s] attorney” (CPLR 2104). Writings between parties to an action or proceeding that discuss the possibility of settlement will be considered to constitute a binding agreement if “the settlement agreement was adequately described in [such] writings, namely, the agreement was clear, the product of mutual accord and contained all material terms” (Palmo v Straub, 45 AD3d 1090, 1092 [2007]; see Bonnette v Long Is. Coll. Hosp., 3 NY3d 281, 285 [2004]). Settlement-related writings may be deemed to have contained sufficiently detailed terms to give rise to a binding agreement when, for example, these writings explicitly incorporate the terms of other documents prepared in anticipation of settlement (see Eastman v Steinhoff, 48 AD3d 738, 739 [2008]). In contrast, settlement-related writings will not be found to have *1424 created a binding agreement if they expressly anticipate a subsequent writing that is to officially memorialize the existence of a settlement agreement and set forth all of its material terms (see Williams v Bushman, 70 AD3d 679, 680-681 [2010]; compare Forcelli v Gelco Corp., 109 AD3d 244, 248 [2013] ).
A careful review of the writings pertinent to the purported settlement agreement here supports Supreme Court’s conclusion that no binding agreement had been reached. The first of the two early 2012 writings was authored by Charles Nash, the Town’s attorney, and was sent to the attention of Mahlon Clements, an attorney who serves as petitioner’s president. Even from a cursory reading of this communication, it is clear that Nash took pains to describe the proposed settlement hypothetically — he repeatedly referenced the terms that the settlement “would” involve, and wrote that, “as soon as [Clements] advise [d] that the taxes [had been] paid,” he “would draw the appropriate settlement papers and provide a copy to [Clements] for [ ] approval before submitting them to [Supreme] Court.” Several weeks later, Clements wrote in response that petitioner was “agreeable to the terms of the settlement as outlined in” Nash’s letter and that petitioner was “making arrangements to obtain the funds to pay the taxes” by June 2012. Because these early 2012 writings evidence nothing more than “an agreement to agree to the amplified terms of a future writing” (Matter of Dolgin Eldert Corp., 31 NY2d 1, 11 [1972]; accord Matter of Galasso, 35 NY2d 319, 321 [1974]; see e.g. Cohen v Cohen, 120 AD3d 1060, 1062 [2014], lv denied 24 NY3d 909 [2014] ), they did not create a binding agreement between the parties.
Furthermore, the circumstances surrounding the exchanges of the proposed stipulations that were created after petitioner paid off its taxes in October 2013 reflect that the early 2012 writings were incomplete as to all terms necessarily material to any settlement of the instant proceedings (compare Eastman v Steinhoff, 48 AD3d at 739). According to petitioner, after it had paid the taxes, Nash “provided a proposed [stipulation” that ostensibly guaranteed petitioner the refund that the parties had discussed, but seemed “to be in conflict with the Real Property Tax Law” as to the manner in which that refund would be transmitted. In response, petitioner drafted a stipulation that contained what it viewed as an acceptable refund provision. That the early 2012 communications did not anticipate the potential statutory conflict identified by petitioner with re *1425 spect to any refund underscores that these writings lacked at least one material term.*
As a final matter, we note that Supreme Court dismissed proceeding No. 1 during the pendency of this appeal (see RPTL 718). Because we agree with Supreme Court that no binding settlement agreement existed here, however, any questions as to the impact of that dismissal upon a settlement agreement between the parties are academic.
Lahtinen, J.P., Lynch and Clark, JJ., concur. Ordered that the order is affirmed, without costs.

 Given the conflicting terms, the stipulation drafted by petitioner amounted to a rejection of, and counteroffer to, the offer embodied in the proposed stipulation authored by Nash (see ADCO Elec. Corp. v HRH Constr., LLC, 63 AD3d 653, 655 [2009]).