Matter of Eckert (2023 NY Slip Op 03270)

Matter of Eckert

2023 NY Slip Op 03270

Decided on June 15, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 15, 2023

535122
[*1]In the Matter of Estate of James Eckert, Also Known as James R. Eckert, Deceased. Michelle Eckert, Respondent; Tara Connelly, Appellant. (And Another Related Proceeding and Two Related Actions.)

Calendar Date:March 27, 2023

Before:Clark, J.P., Aarons, Pritzker, Reynolds Fitzgerald and McShan, JJ.

Meltzer, Lippe, Goldstein & Breitstone, LLP, Mineola (David A. Bamdad of counsel), for appellant.
Coughlin & Gerhart, LLP, Binghamton (Zachary D. Morahan of counsel), for respondent.

Clark, J.P.
Appeal from an order of the Surrogate's Court of Broome County (David H. Guy, S.), entered February 28, 2022, which, among other things, in a proceeding pursuant to SCPA article 10, granted petitioner's motion to enforce a settlement agreement.
James Eckert (hereinafter decedent) died intestate in December 2018. Petitioner (hereinafter the daughter) is decedent's only surviving child. Respondent (hereinafter the wife) is decedent's surviving spouse, having married decedent in July 2018. In August 2020, the daughter commenced the first proceeding seeking letters of administration of decedent's estate and the wife cross-petitioned seeking the same relief. The daughter subsequently commenced an action in Surrogate's Court seeking an order declaring decedent and the wife's marriage null and void on the basis that decedent lacked the mental capacity to marry the wife. The daughter later commenced a separate action in Supreme Court against the wife alleging conversion, undue influence, lack of mental capacity, unjust enrichment and constructive trust in relation to decedent's non-probate retirement accounts; that matter was ultimately assigned to Surrogate's Court, which referred the parties to alternative dispute resolution (hereinafter ADR).
The day after the ADR session, the daughter's counsel sent the wife's counsel an email (hereinafter the initial email) "to follow up [on] the settlement reached at mediation," which involved the wife paying the daughter $515,000, setting forth an outline of the terms of the alleged agreement and asserting that he would prepare a draft settlement agreement. The next day, the wife's counsel responded asking the daughter's counsel to "[l]eave the timing of payment open" and providing additional terms. A week later, the daughter's counsel sent a draft of the proposed settlement agreement. The wife's counsel responded three weeks later asserting that the wife could not settle on the proposed terms as liquidating decedent's retirement accounts would have "enormous" tax consequences.
Soon after, the daughter moved to enforce the settlement that she claimed was memorialized in the parties' email exchange. The wife opposed such relief, asserting that no settlement had been reached. Following oral argument, Surrogate's Court issued a decision and order which, among other things, granted the daughter's motion and determined that the parties had entered into a binding settlement agreement. The wife appeals.
We reverse. Stipulations of settlement are judicially favored resolutions of pending litigation and "are subject to the same well-settled principles that govern the interpretation of a contract" (Jenkins v Jenkins, 145 AD3d 1231, 1234 [3d Dept 2016]; see Graziano v Andzel-Graziano, 196 AD3d 879, 881 [3d Dept 2021]). To form a binding contract, "there must be a meeting of the minds, [so] that there is a manifestation of mutual assent [that is] sufficiently definite to assure that the parties are truly in agreement with respect to all material terms" (Stonehill Capital Mgt. LLC v Bank of the W., 28 NY3d 439, 448 [2016] [internal quotation marks and citations omitted]). Importantly, to ensure that an agreement is enforceable as a stipulation of settlement, its terms must be placed on the record "in open court, reduced to a court order and entered, or contained in a writing subscribed by the parties or their attorneys" (Marpe v Dolmetsch, 256 AD2d 914, 914 [3d Dept 1998]; see CPLR 2104). As the Court of Appeals has explained, "[i]f settlements, once entered, are to be enforced with rigor and without a searching examination into their substance, it becomes all the more important that they be clear, final and the product of mutual accord. These concerns obviously lie at the heart of CPLR 2104, a neutral statute enacted to promote certainty in settlements, which benefits all litigants" (Bonnette v Long Is. Coll. Hosp., 3 NY3d 281, 286 [2004]; see David D. Siegel & Patrick M. Connors, New York Practice § 204 [6th ed, Dec. 2022 update]).
Here, Surrogate's Court erred in finding that a binding agreement was formed, as the parties did not mutually assent to all material terms. To the extent that the daughter's counsel asserts that the initial email set out an overview of the material terms to which the parties agreed during the ADR session, we note that such verbal out-of-court agreements are insufficient to form the basis for a stipulation of settlement (see CPLR 2104; Bonnette v Long Is. Coll. Hosp., 3 NY3d at 286; see e.g. Marpe v Dolmetsch, 256 AD2d at 914). The initial email and the subsequent correspondence also fail to establish that the parties reached an agreement. Following the initial email, the wife's counsel responded, asking the daughter's counsel to "[l]eave the timing of payment open" in the draft settlement, and he suggested additional terms for the draft.[FN1] Following the long-standing principle that "where the recipient of an offer is under no duty to speak, silence, when not misleading, may not be translated into acceptance merely because the offer purports to attach that effect to it" (Matter of Albrecht Chem. Co. [Anderson Trading Corp.], 298 NY 437, 440 [1949]; see Fulginiti v Fulginiti, 127 AD3d 1382, 1384-1385 [3d Dept 2015]), such response did not constitute assent. Indeed, the record is devoid of any indication that the wife's counsel assented to the terms outlined in the initial email or in the subsequent draft settlement agreement. As such, the parties never reached the requisite meeting of the minds as to all material terms and a binding agreement was never formed (see Weksler v Weksler, 163 AD3d 432, 433 [1st Dept 2018]; see also Matter of George W. & Dacie Clements Agric. Research Inst., Inc. v Green, 130 AD3d 1422, 1424 [3d Dept 2015]).
We also remind the parties that, to be enforceable, stipulations of settlement require more than just an agreement among the parties. Once the parties to an active litigation reach an agreement, they must (1) place the material terms of such agreement on the record in open court, (2) reduce them to a court order which is then signed and entered or (3) contain them in a writing subscribed by the parties or their counsel (see CPLR 2104; Bonnette v Long Is. Coll. Hosp., 3 NY3d at 286; see e.g. Matter of Philadelphia Ins. Indem. Co. v Kendall, 197 AD3d 75, 81-82 [1st Dept 2021]). Although the daughter argues that this Court should find an enforceable agreement because the parties cancelled certain depositions, this is not the type of detrimental reliance that excuses compliance with CPLR 2104 (see Palmo v Straub, 45 AD3d 1090, 1092 [3d Dept 2007]; Starr v Rogers, 44 AD3d 646, 647 [2d Dept 2007]; Marpe v Dolmetsch, 256 AD2d at 914; Bedrosian v McCollum, 209 AD2d 778, 779-780 [3d Dept 1994]; compare Lowe v Steinman, 284 AD2d 506, 507-508 [2d Dept 2001]; Conlon v Concord Pools, 170 AD2d 754, 754-755 [3d Dept 1991]), and the parties are free to reschedule such depositions upon remittal, if they so choose. For these reasons, we reverse the order on appeal, deny the daughter's motion and restore the proceedings and actions for further proceedings.
Aarons and Pritzker, JJ., concur.
McShan, J. (dissenting).
We respectfully dissent, as we disagree with our colleagues' determination that the parties' email exchange failed to demonstrate the requisite assent to the material terms of settlement.
A set of subscribed writings between parties to an action that discusses the possibility of settlement may constitute a binding agreement, provided that the discussions set forth all material terms and contain a manifestation of the parties' mutual assent to be bound (see Herz v Transamerica Life Ins. Co., 172 AD3d 1336, 1337-1338 [2d Dept 2019]; Matter of George W. & Dacie Clements Agric. Research Inst., Inc. v Green, 130 AD3d 1422, 1423 [3d Dept 2015]; Palmo v Straub, 45 AD3d 1090, 1092 [3d Dept 2007]). Noting the applicability of contract principles to a written settlement agreement (see Herz v Transamerica Life Ins. Co., 172 AD3d at 1337-1338; Forcelli v Gelco Corp., 109 AD3d 244, 248 [2d Dept 2013]), we must look beyond "either party's subjective intent[, as] the determination must be based on the objective manifestations of the intent of the parties as gathered by their expressed words and deeds" (Brighton Inv., Ltd. v Har-Zvi, 88 AD3d 1220, 1222 [3d Dept 2011] [internal quotation marks and citation omitted]; see Matter of Springs Aesthetic Plastic Surgery, P.C. [Ridha-Singh], 151 AD3d 1408, 1409 [3d Dept 2017]; Coca-Cola Refreshments, USA, Inc. v Binghamton Giant Mkts., Inc., 127 AD3d 1319, 1323 [3d Dept 2015]). To this end, "[a]ssent can be manifested by words or circumstances, but a mere determination of the mind unacted on can never be acceptance" (Diarassouba v Urban, 71 AD3d 51, 58 [2d Dept 2009] [internal quotation marks and citation omitted], lv dismissed 15 NY3d 741 [2010]; see Stonehill Capital Mgt. LLC v Bank of the W., 28 NY3d 439, 448-449 [2016]).
At the outset, it is our view that the primary contention of respondent (hereinafter the wife) that the email exchange did not contain all material terms is simply reflective of her buyer's remorse incurred after the consequences of the agreement became clear. The initial email from counsel for petitioner (hereinafter the daughter) following the alternative dispute resolution session provided that a $515,000 payment would be made by certified check within 20 days of a signed discontinuance. That email further noted that the daughter could "be flexible on payment dates to minimize tax implications," and that she would be "willing to work in good faith to ensure that tax treatment is minimized by timing." In response, the wife's counsel sent a subscribed email the following day, making no mention of any of the other terms beyond the timing of the payment, in which he specifically replied: "Leave the timing of payment open until we have more information." Approximately three weeks after the daughter's counsel sent over a draft settlement agreement, the wife's counsel advised that they had engaged in significant research and discussions with tax professionals, and that "certain tax issues . . . ha[d] come up in connection with the potential settlement." Specifically, the wife's counsel noted that liquidation of the assets at issue — namely, the decedent's retirement accounts — "would trigger an enormous tax regardless of what year it is done" (emphasis added), and, therefore, the wife could not settle on the agreed-upon terms.
In our view, the wife's counsel's attempt to ascribe materiality to the payment terms is unpersuasive. The wife's argument on this appeal is primarily focused on portraying the form of payment as outstanding. However, that contention is clearly belied by the record, as it bears emphasizing that the wife's counsel's responsive email did not dispute nor reject the representation that the $515,000 payment would be made by certified check. Accordingly, we believe that the reference to the timing of such payment does not reflect a continuing negotiation as to whether that payment would be cash as opposed to a transfer of retirement funds, which is what the wife primarily contends on appeal. To this point, while our colleagues find that the timing of withdrawal is crucial to the settlement insofar as it involved the liquidation of retirement assets, such was only pertinent to the wife's ability to liquidate those assets while minimizing any tax consequences rather than the manner in which the payment would be provided to satisfy the settlement agreement. Accordingly, the fact that the wife later discovered that the significant tax consequences of liquidation could not be avoided regardless of the year it occurred does not suggest that such timing was material to the parties' settlement agreement (see Rawald v Dormitory Auth. of the State of N.Y., 199 AD3d 477, 478 [1st Dept 2021]; Matter of Philadelphia Ins. Indem. Co. v Kendall, 197 AD3d 75, 81 [1st Dept 2021]; Forcelli v Gelco Corp., 109 AD3d at 248; Palmo v Straub, 45 AD3d at 1092; see also Guice v PPC Residential, LLC, 212 AD3d 577, 577 [1st Dept 2023]).
In turn, because we believe that the material terms were included within the initial email from the daughter's counsel, we find it clear from the wife's counsel's response that she had assented to the settlement agreement. Our colleagues accurately note that silence cannot constitute acceptance of an offer absent a duty to speak (see Diarassouba v Urban, 71 AD3d at 57). However, in our view, the circumstances before us do not require that we divine the wife's acceptance in the absence of any response. To the contrary, in this instance, we may look to the responsive email from the wife's counsel that offered no objection to the terms set forth in the initial email from the daughter's counsel, including the total settlement figure, and simply addressed the daughter's willingness to work with the wife to minimize the tax consequences of the agreed-upon cash payment. It could therefore be reasonably inferred by the daughter's counsel that the wife's counsel's response conveyed a manifestation of assent to be bound by the terms set forth in the initial email (see Forcelli v Gelco Corp., 109 AD3d at 248; Minelli Constr. Co., Inc. v Volmar Constr., Inc., 82 AD3d 720, 722 [2d Dept 2011]; Glen Banks, New York Contract Law § 2:13 [28 West's NY Prac Series, July 2022 update]; cf. Sannon-Stamm Assoc., Inc. v Keefe, Bruyette & Woods, Inc., 96 AD3d 630, 631 [1st Dept 2012]). As we believe the parties' email exchange constitutes a valid settlement, we would affirm (see Matter of Philadelphia Ins. Indem. Co. v Kendall, 197 AD3d at 78-79).
Reynolds Fitzgerald, J., concurs.
ORDERED that the order is reversed, on the law, without costs, motion denied, and matter remitted to the Surrogate's Court of Broome County for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: The parties' contemplated agreement involved the wife withdrawing funds from decedent's retirement accounts and using those funds to pay the daughter the discussed sum. The timing of the withdrawal from such accounts is crucial, as withdrawals carry significant tax consequences (see Internal Revenue Code [26 USC] § 72 [t] [1]; Rousey v Jacoway, 544 US 320, 323 [2005]). Under these circumstances, the timing of any payments stemming from retirement account funds was a material term (see UCC 1-205 [a]; Friedfeld v Citibank, N.A., 187 AD3d 463, 464 [1st Dept 2020]), and the parties' communications, combined with the draft settlement agreement prepared by the daughter's counsel, which specifically left the timing of payment blank, indicate that the parties had not reached mutual assent on such term.