Brigante v von Ballmoos (2024 NY Slip Op 51232(U))

[*1]

Brigante v von Ballmoos

2024 NY Slip Op 51232(U)

Decided on September 5, 2024

Supreme Court, Washington County

Muller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 5, 2024
Supreme Court, Washington County

Elizabeth Brigante, Petitioner,

against
Jaisen von Ballmoos and FAIRVIEW STABLE, LLC, Respondents.

Index No. EC2023-36210

Mark Salem Law, P.C. Brooklyn, (Mark Salem, of counsel) for petitioner.
Aldous PLLC, New York City (Kenneth Aldous of counsel), for respondents.

Robert J. Muller, J.

On November 10, 2023, Elizabeth Brigante (hereinafter "Petitioner") commenced this special proceeding to determine the validity of a stable lien pursuant to Lien Law §§183 and 201-a. Jaisen von Ballmoos and Fairview Stable, LLC (hereinafter collectively referred to as "Respondents") filed a Verified Answer, Affirmative Defenses and Counterclaim seeking a declaratory judgment that their Notice of Claim and Intention to Sell is valid and to dismiss the petition.
Background
Respondent Jaisen Von Ballmoos (hereinafter "von Ballmoos") is a professional horse trainer and he and his wife own Fairview Stable, LLC (hereinafter "Fairview") located in Granville, New York. Petitioner Elizabeth Brigante is the owner of four horses currently boarded at Fairview. 
In January 2021, petitioner and von Ballmoos traveled to a Morgan horse breeding farm in western Pennsylvania for the purpose of shopping for horses with show potential. (NYSCEF No. 9 at ¶ 18.) At the farm, they saw two horses that were of interest, a five-year-old mare known as Lily [formally "Kinzu Unconditional Love" AMHA Reg. No. 193033] and a young colt known as Tommy [formally "Kinzu All Or Nothing" AMHA Reg. No. 199214]. According to Von Ballmoos, he and petitioner entered into an oral agreement that: (i) petitioner would purchase both Lily and Tommy; (ii) respondents would carry the expense of boarding and training one of the horses (i.e., Lily); (iii) petitioner would pay the expense of the other horse (i.e., Tommy); and (iv) respondents and petitioner would share in Tommy's economic value, such that, when Tommy sold, petitioner and von Ballmoos would split the sale proceeds equally [*2][id. at ¶ 19).[FN1]

Petitioner claims the parties did not discuss a commission for the sale of Tommy and believed that von Ballmoos would train and board Tommy at no cost and that he would be paid a 10% commission at the time of his sale. After petitioner purchased Lily and Tommy for $30,000.00 in January 2021, respondents boarded, trained, and provided professional services for them. (NYSCEF No. 9, ¶21)
In October 2021, von Ballmoos presented Lily at the Grand National and World Championship Morgan Horse Show in Oklahoma City, where she was crowned Reserve World Champion Senior Mare and Grand National Champion 5 and Over Mare. (id. at ¶22) As a world-titled mare, the parties agreed Lily should be bred to Tommy. The parties hoped that if Tommy produced a high-quality foal it would promote Tommy as a breeding stallion and provide potential sources of revenue, both in the form of prospective stud fees and the resulting foal when it sold. (id. at ¶ 23.) 
The following year, Tommy earned titles as the Reserve Grand National Champion 3-Year-Old Stallion and Reserve Grand National Champion 3-Year-Old Park Harness and in April 2023, Lily gave birth to her and Tommy's foal, a colt that was named Junior (hereinafter Lily, Tommy and Junior are collectively referred as the "Claimed Horses"). Respondents provided food, water and shelter as well as basic training to Junior. (id. at ¶27)
In August 2023, von Ballmoos sent a text to petitioner regarding the collection of fees related to Tommy's breeding to two mares and veterinary services as well as the need for Tommy to be at shows, such as the one in Oklahoma, in order to attract potential buyers. (NYSCEF No. 23) Petitioner responded that she paid one of the veterinary bills but expressed concern about her financial resources and indicated she would like to sell all three horses. To this end, the parties discussed and agreed to taking Tommy to Oklahoma City for the purpose of attracting a potential buyer. (NYSCEF No. 24)
Von Ballmoos did not receive any offers for Tommy in Oklahoma. On October 21, 2023 petitioner sent a text message to von Ballmoos again expressing her difficult financial situation and her inability to pay various bills. Petitioner also advised von Ballmoos that she was ending her training at Fairview, her horses were no longer for sale, and that she would make arrangements to retrieve the Claimed Horses and pay the cost of showing Tommy together with previous treatments he received. (NYSCEF No. 28) Von Ballmoos replied he was owed more than just the expense of the shows and he would not permit the removal of the horses from Fairview without receiving $25,000.00. (NYSCEF No. 28)
Respondents retained counsel and on October 23, 2023 a letter was sent to petitioner advising her that the Claimed Horses would be retained pursuant to NY Lien Law §183 until she paid the balance in full. (NYSCEF No. 29) Two days later a commercial equine truck arrived at Fairview, accompanied by petitioner and her boyfriend, to remove the horses. The owner and [*3]driver of the transport company, however, were advised by Meghan von Ballmoos of the situation and the driver left without the horses. (NYSCEF Nos. 33 and 34)
The following day, counsel for von Ballmoos sent a second letter to petitioner advising her of respondents' legal position and enclosed the invoices which purportedly remained unpaid. (NYSCEF No. 31) On November 1, 2023, petitioner was sent copies of the Verified Notice of Claim and Intention to Sell (hereinafter "Notice of Sale") pursuant to Lien Law §201 demanding payment in the amount of $59,614.06 within fourteen (14) days for the boarding and care of Tommy, Lily and Junior and advising, if not redeemed, the Claimed Horses would be held for sale on November 27, 2023. In response, petitioner timely filed a petition challenging the validity of the stable lien.
Procedural History
After service of the petition, respondents filed a Verified Answer, Affirmative Defenses and Counterclaim seeking a declaratory judgment finding the Notice of Claim to be valid and dismissal of the Petition. Respondents claim, inter alia, the petition is fatally defective pursuant to CPLR §§402, 3013, and 3015(b), and must be dismissed. 
Three weeks later, petitioner filed a companion plenary action, Elizabeth Brigante v. Jaisen von Ballmoos and Fairview Stable, LLC (Sup. Ct., Washington County Index No. EC2023-36410) (hereinafter "Action #2"). Immediately thereafter, on January 3, 2024, Petitioner moved to consolidate the two actions, convert this special proceeding to a plenary action and grant the sale of the Claimed Horses pursuant to CPLR §2702. (Motion seq. #2, NYSCEF Nos. 39, 40 48-52) 
Respondents opposed the motion, again challenging the sufficiency of the petition and asked the court for a summary adjudication of the special proceeding, opposed consolidation of the two matters but argued in the alternative that if the Court were inclined to allow consolidation, Action #2 should be converted to a special proceeding, sought to hold the plenary action in abeyance and opposed the request to sell the Claimed Horses. (NYSCEF Nos. 43-47) After a virtual conference with this Court, the parties agreed the plenary action would be held in abeyance pending disposition of the then pending motions. (NYSCEF No. 41)
In the meantime, the parties continued to seek a resolution of the matter and on February 16, 2024 respondents filed a motion seeking to enforce a settlement agreement between the parties which included a written offer letter from petitioner's counsel and an email accepting the offer from respondents' counsel. (Motion seq. #3, NYSCEF Nos. 53-69) Petitioner opposes the motion claiming the offer was not timely accepted, the paperwork transferring ownership of the horses contained blanks which were unacceptable to her, and an indemnification clause was missing. 
Petitioner retained new counsel who filed an Order to Show Cause on July 16, 2024 seeking a permanent injunction preventing respondents from showing petitioner's horses or using them in any manner outside the scope of maintaining their health and well-being and setting a bond as surety during the pendency of the matter. (Motion seq. #4, NYSCEF Nos. 74-92). With the petition and three motions pending, the Court heard oral arguments on August 29, 2024.
Discussion
While this Court would typically address the petition and motions identified above ad seriatim, the Court is compelled to first determine whether the parties entered into an [*4]enforceable settlement agreement. (Motion seq. #3) 
On February 1, 2024 at 5:31 p.m., petitioner's counsel sent an email, from his email address to respondents' counsel and attached a letter, signed by petitioner's counsel. The letter states in relevant part:
"My client has agreed to transfer to ownership of all three (3) horses (including the unborn foal) in exchange for mutual general releases thus resolving all claims between the parties."[FN2]
"This offer is good until Monday February 5, 2024 at 5:00 pm."
(NYSCEF No. 56)
On February 2, 2024 at 11:19 am, respondents' counsel replied to the offer by email and stated in part:
"I am writing on behalf of my clients, Jaisen von Ballmoos and Fairview Stable, LLC, to respond to your letter, dated February 1, 2024. My clients agree to accept the transfer of ownership of the three (3) horses (including the unborn foal)[FN3] from your client, Elizabeth Brigante, in exchange for mutual general releases and other typical settlement terms (e.g., NY choice of law/jurisdiction, integration clause, etc.), as set forth and agreed in a written settlement agreement. My clients would like to complete the settlement quickly. To that end, I will prepare a draft agreement, a draft copy of which I will send you ASAP (likely over the weekend or Monday)."
"Among the things we will need from your client are the original American Morgan Horse Association (AMHA) Registration Certificates for Tommy and Lily. It is my clients' understanding that your client has the originals in her possession. As part of the transfers of ownership — which also will be set forth in the settlement agreement — your client will need to sign the first line of paragraph 5 on the back of the Certificates. She should only sign the first line ("Signature") and not complete any other lines on the transfer forms. My clients will complete the remainder of the transfer information."
(NYSCEF No. 57)
This email was signed "Ken" and contained the signature block "Kenneth E. Aldous, Attorney at Law (New York) & Solicitor (England & Wales)". Approximately an hour and one-half later, petitioner's counsel responded by email, "OK" followed by his signature block.
On Monday, February 5, 2024 respondents' attorney emailed petitioner's counsel a draft settlement agreement. Receiving no response, respondents' counsel followed up with an email on February 8, 2024, a voicemail on February 12, 2024, additional emails on February 13 and 14, 2024 with a letter attached advising respondent had accepted petitioner's offer and while it would be in the parties' best interest to memorialize the agreement, it was not a legal necessity. (NYSCEF No. 55 at ¶7-12). Petitioner's counsel responded by email on February 14, 2024, advising he had been ill and further stated:
"My client does not accept transferring the horses into an unknown person by leaving the papers blank and you do not include an indemnification clause. So, therefore my client rejects your settlement papers and furthermore, I must talk with her bankruptcy attorney Todd Taylor, but I think the possible settlement is dead at this point."
(NYSCEF No. 63)
Respondents assert the written offer from petitioner's counsel and respondents' counsel's acceptance of the offer, less than twenty-four hours later, and counsel's acknowledgement of that acceptance, satisfy the requirements of CPLR §2104 and constitutes a binding settlement agreement.
Petitioner contends the offer was rejected by respondents when they set forth a new term, namely how the documents for the transfer of ownership should be completed, and therefore there was no written agreement of the parties setting forth the material elements. In support of this argument, petitioner relies upon Bonnette v. Long Island College Hospital, 3 NY3d 281, [2004] and Eckert v. Connelly, 217 AD3d 1151 [3d Dep't 2023]. However, these cases are distinguishable from the facts here. In those cases, the parties had reached oral, out-of-court settlements and the court found material terms of the agreements were notably absent from the parties' writings. (Bonnette at 286; Eckert at 1153).
Stipulations of settlement are judicially favored, will not lightly be set aside, and are to be enforced with rigor and without a searching examination into their substance as long as they are clear, final and the product of mutual accord. (Herz v. Transamerica Life Ins. Co., 172 AD3d 1336, 1337 [2d Dept 2019]. A settlement stipulation is enforceable so long as it complies with the requirements of CPLR §2104 and sets forth all the material terms of settlement. (Phila Ins. Indem. Co. v. Kendall, 197 AD3d 75 [1st Dept 2021]). CPLR §2104 requires that a settlement stipulation must be in writing and subscribed by the party or party's attorney against which enforcement is sought. Emails exchanged between counsel can constitute a settlement reduced to writing within the meaning of CPLR §2104. (id.; see also Rawald v. Dormitory Auth. of the State of NY, 199 AD3d 477 [1st Dept 2021] (internal citations and quotations omitted). To be enforceable as a binding settlement agreement, a writing must set forth all material terms of the agreement; contain an expression of mutual assent; and not be conditioned on a further occurrence. (Forcelli v. Gelco Corp., 109 AD3d 244 [2d Dept 2013]).
Where, as here, an attorney sends an email with the intent of relaying a settlement offer or acceptance, and their email account is identified in some way as their own, it is unnecessary for them to retype their own signature to satisfy the subscription requirement of CPLR §2104. (Matter of Phila. Ins. Indem. Co. v Kendall, 197 AD3d 75, 76 [1st Dept 2021] Furthermore, it is not disputed the offer letter and acceptance email were in written form and subscribed to by the parties' attorneys, therefore, the Court finds the exchange of emails between the parties satisfies the requirements of CPLR §2104.
Next, a written agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms. (see R/S Assoc. v NY Job Dev. Auth., 98 NY2d 29, 32 [2002]). Petitioner claims the email exchange did not set forth the complete agreement between the parties because respondents subsequently requested petitioner not complete portions of the horse registration forms and the settlement agreement did not contain an indemnification clause. The Court disagrees.
The material terms of the agreement between the parties include: (1) the transfer of ownership of the three horses (including the then unborn foal) in exchange for (2) mutual [*5]releases and thereby (3) resolving all claims between the parties. (see Philadelphia Ins. Indem. Co., 197 AD3d at 81) The Court finds the manner in which the necessary paperwork is completed which results in the transfer of the ownership of the horses not to be a material element of the agreement. However, even if it were considered a material term, respondents' counsel's February 2, 2024 email sets forth how it was to be achieved and petitioners' counsel responded with "ok", thereby consenting to the process. (NYSCEF No. 58)
Additionally, the Court finds no merit to petitioner's argument that a necessary component of the agreement was the inclusion of an indemnification clause. There was no mention of such clause in petitioner's offer letter, respondents' acceptance email or petitioner's counsel's acknowledgment of the acceptance. Indeed, had petitioner considered this a material term, she should have included it in the February 1, 2024 offer letter. 
Finally, petitioner alleges the offer was not timely accepted. The Court disagrees. The offer letter required respondents' acceptance by 5:00 pm on February 5, 2024. In no uncertain terms, respondents counsel sent notification on February 2, 2024 that his clients agreed to accept the offer, and petitioner's counsel acknowledged same well before February 5, 2024. 
The Court finds the parties' settlement agreement is enforceable since the exchanged emails were subscribed by counsel, set forth the material terms of the agreement, namely, the transfer of ownership of the horses in exchange for mutual general releases thereby resolving the issues between the parties, and the settlement was not conditioned on any further occurrence, such as the formal execution of a release and settlement. ( see Herz v Transamerica Life Ins. Co., 172 AD3d 1336, (2d Dep't 2019).
As a result of the foregoing determination, motion sequence #2 seeking consolidation of the two actions is deemed moot. However, were the Court to consider the motion it would be denied based upon insufficient pleadings. CPLR §602(a) governs the consolidation of actions and states:
"When actions involving a common question of law or fact are pending before a court, the court, upon motion, may order a joint trial of any or all the matters in issue, may order the actions consolidated, and may make such other orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."
Here, petitioner states in general terms, "When, as here, common questions of law or fact exist in two related actions, the Court should exercise its broad discretion under CPLR § 602(a), and grant a motion to consolidate the actions". (NYSCEF No. 40 at 10) Petitioner, however, does not attach copies of the complaint for Action #2, does not advise the Court of the causes of actions asserted in Action #2, and neglects to identify any facts or questions of law that are similar in both matters. Simply stated, there is no offering by petitioner that there are shared issues of either fact or law that unite these actions which warrant consolidation. (see generally Matter of Santander Consumer USA, Inc. v Autorama Enters., Inc., 205 AD3d 1116 [3d Dept 2022])
In view of the foregoing, the remaining contentions set forth by the parties are deemed moot.
Thus, having considered NYSCEF document Nos. 1, 7 through 36, 39 through 69, 72, 74 through 84, and 86 through 92 and oral argument having been heard on August 29, 2024 with Mark Salem, Esq. appearing on behalf of petitioner and Kenneth Aldous, Esq. appearing on behalf of respondents it is hereby 

ORDERED, respondents' motion to enforce the written settlement agreement entered into by the parties on February 2, 2024 is granted in part, requiring all rights, title and ownership of the Claimed Horses; Lily [formally "Kinzu Unconditional Love" AMHA Reg. No. 193033], Tommy [formally "Kinzu All Or Nothing" AMHA Reg. No. 199214], Junior [a colt born to Lily in April 2023] as well as the colt born to Lily on April 23, 2024 shall be transferred to respondents and the parties are directed to exchange mutual general releases; and it is further
ORDERED, respondents' stable lien and Notice of Claim and Intention to Sell are hereby cancelled and the petition is dismissed with prejudice as moot; and it is further 
ORDERED, respondents Counterclaim is dismissed as moot; and it is further
ORDERED, petitioner's motion sequence #2 to consolidate this special proceeding with the plenary action, convert the special proceeding to a plenary action and grant the sale of the Claimed Horses pursuant to CPLR §2702 is denied in its entirety as moot [FN4]
; and it is further
ORDERED, petitioner's Order to Show Cause seeking a permanent injunction and surety bond is denied in its entirety as moot; and it is further 
ORDERED, any relief not specifically addressed herein has nonetheless been considered and is expressly denied.
The above constitutes the Decision and Order of this Court.
The original of this Decision and Order has been filed by the Court. Counsel for respondent is directed to serve petitioner with notice of entry. 
DATED: September 5, 2024, at
Lake George, New York.
________s/____________________________
ROBERT J. MULLER, J.S.C.

Footnotes

Footnote 1:Petitioner and respondents had previously entered into an oral business arrangement where petitioner paid to board her Morgan horse, known as Phantom, at Fairview and von Ballmoos trained the horse to ride and drive. Under von Ballmoos' tutelage, Phantom placed and won in several shows, and won a Grand National title in the Classic Pleasure Driving Junior Exhibitor class in 2020. Shortly thereafter, with the assistance of von Ballmoos, Phantom was sold for substantially more than petitioner had purchased the horse for. [NYSCEF No. 9, ¶ 11-17]

Footnote 2:The letter also advises the von Ballmoos' limited liability company has been inactive for more than ten (10) years and if the matter was not resolved by settlement, petitioner was prepared to move towards bankruptcy. (NYSCEF No. 56) . 

Footnote 3:Lily gave birth to a colt on April 23, 2024. (NYSEF No. 72)

Footnote 4:This Court is without jurisdiction to dismiss Action #2 entitled, Elizabeth Brigante v. Jaisen von Ballmoos and Fairview Stable, LLC (Sup. Ct., Washington County Index No. EC2023-36410). The Court denied consolidation of the two cases. Action #2 has not been assigned to this Court, a request for judicial intervention has not been made and the record is void of proof of service on respondents.